## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 16 2016, 8:48 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Joanne Baitup
Law Office of Joanne Baitup
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of: C.A.L., B.A.L., and B.C.L. (Minor Children), <br><br> C.L. (Father) and J.S. (Mother), <br> *Appellants-Respondents,* <br><br> v. <br><br> Indiana Department of Child Services, <br> *Appellee-Petitioner.* | February 16, 2016 <br><br> Court of Appeals Case No. 64A05-1507-JT-873 <br><br> Appeal from the Porter Circuit Court <br><br> The Honorable Mary R. Harper, Judge <br><br> The Honorable Gwenn R. Rinkenberger, Magistrate <br><br> Trial Court Cause No. 64C01-1410-JT-820, 64C01-1410-JT-821, and 64C01-1410-JT-822 |

**Najam, Judge.**

## Statement of the Case

C.L. ("Father") appeals the trial court's termination of his parental rights over his three minor children, C.A.L., B.A.L. and B.C.L. ("the children").[1] Father presents a single issue for our review, namely, whether the trial court's judgment is clearly erroneous. We affirm.

## Facts and Procedural History

In November of 2012, the Indiana Department of Child Services ("DCS") filed a petition in which DCS alleged the children to be Children in Need of Services ("CHINS") due to Father's history of domestic violence in the presence of the children and the conditions of the children's home with Father. Father later admitted the children were CHINS. Consequently, the court ordered Father to participate in various services, including services to enhance his parenting abilities.

On October 28, 2014, DCS filed its petition to terminate Father's parental rights over the children. Following a fact-finding hearing, the court entered the following findings of fact:

> 13. The Court finds that DCS has had previous involvement with this family on December 6, 2011[,] with substantiated

---

[1] Although J.S., the children's mother, was a party to the trial court proceedings and also had her parental rights terminated, she does not participate in this appeal.

allegations of neglect to their oldest child, [C.A.L.,] against [mother] and [Father] based on alcohol consumption and unsafe home environment.

14. The Court finds that[,] on November 29, 2012, the children were detained due to the pattern of domestic violence between the parents, intoxication, and neglect posing a threat to the safety of the children. DCS assessment worker Ellen Wilkerson testifies that the parents' home was in disarray with floors covered with animal feces, roaches, garbage, food days old, and a ham bone with several cats eating from it.

* * *

42. Father had inconsistent housing and work. On July 24, 2013, Father was kicked out of his brother[']s home in Gary . . . and began residing with a friend. Throughout the case, Father lived with friends, family, in a tent[,] and in a men[']s shelter[,] which he voluntarily left. There was inconsistent work and continued substance use by Father. Father could not care for himself[,] let alone his three (3) children.

* * *

71. Father[']s individual counseling between October 2013 and March 2014 had progressively declined, with no scheduled sessions in March 2014 due to Father[']s incarceration.

72. Father was cooperative with his case management services; however, Father was still unable to locate permanent housing or a permanent job.

73. Father obtained temporary housing through Housing Opportunities, but [he] was later evicted due to his arrest and upon his release Father stayed at New Creation Men[']s Shelter.

* * *

83. On September 11, 2014[,] and October 13, 2014[,] Father failed two drug screens . . . .

84. Father had not secured housing and continued to live with friends and[,] as of November 18, 2014, Father lived with an acquaintance in a trailer for $60.00 a week. The trailer was not appropriate for exercising visitation.

* * *

91. Father was arrested at the conclusion of the February 17, 2015, hearing on a warrant issued for a Probation Revocation. Father was released from incarceration on April 3, 2015. On April 16, 2015[,] FCM Johnson visited the home where [F]ather was staying with friends. Even prior to her entering the home she was able to smell the odor of marijuana. Upon entering the home, FCM observed the home to be in disarray and was able to smell an attempt to mask the marijuana odor. Again, this home would not be suitable for reunification. Father was drug screened that day, which . . . were positive for THC and cocaine.

* * *

95. The Court finds that the child [C.A.L.] throughout this case has shown increased aggressive behavior. [H]e was evaluated . . . and diagnosed with oppositional Defiant Disorder and Adjustment [Diso]rder.

96. The Court finds that [C.A.L.'s] aggressive behaviors have increased throughout this case due to the inconsistency of the parents in maintaining contact with their children.

97. The court finds that [B.C.L. and B.A.L.] have special needs and have been in four (4) foster home placements and one relative placement since their detention on November 29, 2012.

98. The Court finds that due to aggressive behavior [C.A.L.] has been in four (4) foster homes and three relative placements since his detention on November 29, 2012.

* * *

101. The Court finds that the children have made positive progress since being placed in foster care. The children's development has progressed; [C.A.L.'s] behavior is under control; [B.C.L. and B.A.L.] currently have not needed services from [their service provider].

102. The Court finds that [C.A.L.] is placed with his paternal uncle and aunt and is happier and progressing well under the care of his relatives.

103. The Court finds that [B.C.L. and B.A.L.] were three (3) months old when removed and they have not established a bond with [F]ather. The Court finds that they are currently placed in a pre-adoptive foster home and are bonded to the foster parents.

104. [CASA] Rose Butler testified . . . as follows: The children have been out of the home for twenty-nine (29) months . . . . CASA feels we have given [F]ather every benefit of the doubt and believes circumstances are such that reunification with Father is impossible. Father has no stable housing[,] only

temporary housing. . . . Father has no safe place to live; he is not consistently engaged; he continues to fail drug screens, the last drug screen being positive for marijuana and cocaine. Father has been in and out of jail and did not contact CASA immediately upon his release. Father has had continuous problems with drugs and alcohol and cannot care for himself let alone his children. Father relies on his mother to get by. Father is not capable of caring for his children and has not been able to [do] so since the children were removed in November of 2012. The children are in foster care and flourishing in the foster care/pre-adoptive home. [B.C.L. and B.A.L.] call the pre-adoptive parents mom and dad. [C.A.L.] will be adopted by his paternal uncle . . . . CASA believes it[']s in the best interest of the children to have parental rights terminated and to place the children up for adoption. The CASA believes this plan is in the best interest of the children even if [C.A.L.] will be separated from [B.C.L. and B.A.L.] The brothers are not bonded.

Appellant's App. at 15, 17, 19-22 (internal citations omitted).

[4]     In light of its findings of fact, the trial court concluded, in relevant part:

DCS has alleged and proven by clear and convincing evidence that: (1) there is a reasonable probability that the conditions that resulted in the children[']s removal or the reasons for placement outside the home will not be remedied; and (2) there is a reasonable probability the continuation of the parent-child relationship poses a threat to the well-being of the children.

*Id.* at 23. The court also concluded that termination of Father's parental rights was in the children's best interests. This appeal ensued.

# Discussion and Decision

Father appeals the trial court's termination of his parental rights over the children. We begin our review of this issue by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Family & Children (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cnty. Ofc. of Family & Children (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove, in relevant part:

> (A) that one (1) of the following is true:
>
> > (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

* * *

(B) that one (1) of the following is true:

> (i)  There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

> (ii)  There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii)  The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).  DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'"  *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cnty. Ofc. of Family & Children (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*.  Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment.  *Id.*  Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's

judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cnty. Ofc. of Family & Children (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[8] Here, in terminating Father's parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Ofc. of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[9] Father first challenges the trial court's conclusion that DCS met its burden under Indiana Code Section 31-35-2-4(b)(2)(B). Again, under that subsection, DCS must prove *either* that there is a reasonable probability that the conditions that resulted in the children's will not be remedied *or* that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child. I.C. § 31-35-2-4(b)(2)(B). Father's only argument under subsection (b)(2)(B) is that DCS failed to demonstrate a reasonable probability that the conditions that resulted in the children's removal will not be remedied.

[10]    Father's argument is not well taken.  First, he does not challenge the trial court's alternative, and equally valid, basis for termination on the grounds that continuation of the parent-child relationship posed a threat to the well-being of the children.  *See* I.C. § 31-35-2-4(b)(2)(B)(ii).  Having failed to challenge this independent basis for the trial court's order, Father has waived this argument, and we are obliged to affirm the trial court's order accordingly.  *In re L.S.*, 717 N.E.2d at 209.

[11]    Second, Father's waiver notwithstanding, his challenge to the trial court's order under Indiana Code Section 31-35-2-4(b)(2)(B)(i) is merely a request for this court to reweigh the evidence.  Father does not challenge DCS's evidence, material and significant factual findings made by the trial court, or the court's reliance on those findings in its conclusions.  Rather, he simply asserts that this court should credit evidence he deems favorable to himself rather than the evidence relied on by the trial court.  But we will not reweigh the evidence on appeal.  *In re D.D.*, 804 N.E.2d at 265.  Accordingly, we reject Father's arguments under subsection (b)(2)(B).

[12]    Father also challenges the trial court's conclusion that DCS demonstrated that termination of his parental rights was in the children's best interests, as required under Indiana Code Section 31-35-2-4(b)(2)(C).  But, again, Father merely asks that we credit evidence he deems favorable to himself rather than the evidence relied on by the trial court, which we will not do.  *Id.*  The trial court's conclusion is supported by the testimony of the family case manager and the court appointed special advocate.  It is well established that such testimony, in

addition to evidence demonstrating an element of subsection (b)(2)(B), "is sufficient to show by clear and convincing evidence that termination is in the child's best interests." *Stewart v. Ind. Dep't of Child Servs. (In re J.S.)*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). Accordingly, we affirm the trial court's termination of Father's parental rights.

[13] Affirmed.

Riley, J., and May, J., concur.